UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHAVERRI ET AL.                          CIVIL ACTION

VERSUS                                   NO: 11-1289 C/W
                                         11-1300, 11-1301,
                                         11-1303, 11-1305,
                                         11-1311, 11-1320

DOLE FOOD COMPANY, INC. ET               SECTION: "J" (4)
AL.

## ORDER AND REASONS

Before the Court are Defendants' Motions for Summary
Judgment on Prescription (**Rec. Docs. 114, 120, 121**), Plaintiffs'
opposition to same (**Rec. Doc. 175**), and Defendants' replies
thereto (**Rec. Docs. 178, 179, 183, 186, 187**).[1] The Court held
oral argument on Defendants' motions on August 15, 2012. Having

---

[1] Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit
Company, and Standard Fruit and Steamship Company (collectively, "Dole") filed
a Motion for Summary Judgment on Prescription (**Rec. Doc. 121**); Defendant Del
Monte Fresh Produce N.A., Inc. ("Del Monte") filed a Motion to Join Dole's Motion
for Summary Judgment (**Rec. Doc. 120**); and, Defendants Chiquita Brands
International, Inc., Chiquita Brands, Inc., and Maritrop Trading Corporation
(collectively, "Chiquita") filed a Motion to Join Dole's Motion for Summary
Judgment (**Rec. Doc. 114**). Dow Chemical Company ("Dow") and Dole filed independent
replies to Plaintiffs' opposition (**Rec. Doc. 178, 186**). Chiquita (**Rec. Doc.
183**), Del Monte (**Rec. Doc. 187**), and Occidental Chemical Corporation
("Occidental") (**Rec. Doc. 179**) joined in Dow and Dole's replies.

1

considered the motions and legal memoranda, the arguments of counsel, and the applicable law, the Court finds that Defendants' motions should be **GRANTED** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This action arises out of product liability claims made by foreign agricultural workers for injuries and damages allegedly caused by exposure to the pesticide dibromo chloropropane ("DBCP"), while working on banana farms in Costa Rica, Ecuador, and Panama. The instant action consolidates seven actions filed on behalf of approximately 261 plaintiffs in the United States District Court for the Eastern District of Louisiana between May 31, 2011 and June 2, 2011.[2] The entities named as Defendants in this action are Dole, Dow, Occidental, Amvac Chemical Corp., Shell Oil Co., Chiquita, and Del Monte.[3] The Plaintiffs allege that all either manufactured, distributed, and/or used DBCP on the commercial banana farms where Plaintiffs worked between 1960 and 1992.[4] Plaintiffs claim that their exposure to DBCP caused

---

[2] At oral argument Plaintiffs' counsel reported that the actual number of named Plaintiffs in this case may only be 258, noting that an error may have been made due to double counting. OA Hr'g Tr., 25, Aug. 15, 2012.

[3] Fourth Amended Complaint, Rec. Doc. 104, pp.12-34, ¶¶ 28-104. It should be noted that Amvac Chemical Corporation and Shell Oil Co. joined in the motions for summary judgment before consolidation. See, e.g., Rec. Doc. 127, 131.

[4] Id. at 13, ¶¶ 28-30.

2

them to suffer serious and permanent injuries to their health, including: injury to their reproductive capacities, damage to their corneas, development of chronic skin conditions, compromised renal systems, damage to their pulmonary and respiratory systems, and increased risk of cancer. Id. at 34, ¶ 106. No Plaintiff in this case alleges that he or she was exposed to DBCP after 1992; however, 219 Plaintiffs have submitted sworn affidavits stating that they did not realize that DBCP could cause sterility until they learned of the 1993 Jorge Carcamo v. Shell Oil Co., No. 93-2290, class action suit filed in Texas on behalf of individuals exposed to DBCP.[5] Additionally, of the 219 Plaintiffs who have submitted affidavits, 215 state that they were not aware of their own sterility until they submitted to a sperm test sometime between 1993 and 2012.[6] According to the affidavits, it was at that time that the individuals realized their sterility might be connected to past exposure to DBCP. Id. In addition to the aforementioned Texas class action, approximately twenty-one other class and individual actions have

---

[5] Pls.' Exhibits H - H-219, Rec. Docs. 175-8, 175-9, 175-10, pp. 1 - 196, ¶¶ 2, 4.

[6] Id. ¶ 3. Of these Plaintiffs, twenty-three state that they became aware of their sterility in 1993, eighteen in 1994, ten in 1995, two in 1996, two in 1997, thirty-seven in 1998, two in 1999, forty-eight in 2000, sixty-eight in 2001, one in 2007, two in 2009, one in 2010, and one in 2012. Only 213 affidavits are signed by Plaintiffs. Catalino Rosales-Pineda and Eulogio Apolinio Zambrano-Otero did not sign their affidavits.

been filed on behalf of similarly situated individuals in Florida, Mississippi, Louisiana, Hawaii, Delaware, and California.[7] Because the prescription issue in the instant case hinges upon a proper understanding of the procedural history in the prior actions, a detailed description of those actions follows.[8]

A.   The Texas Class Action (1993 - 2010): <u>Carcamo v. Shell Oil Co.</u> and <u>Delgado v. Shell Oil Co.</u>

In August of 1993 a putative class action, <u>Jorge Carcamo v. Shell Oil Co.</u>, was filed in the District Court of Brazoria County, a state court in Texas. The action named as defendants the same defendants listed in the instant case, and defined the putative class as "[a]ll persons exposed to DBCP, or DBCP-containing products. . . between 1965 and 1990."[9] On March 29, 1994, the plaintiffs in <u>Carcamo</u> filed a motion for class

---

[7] Defendants allege that some of these class actions include plaintiffs involved in the instant suit and/or plaintiffs who were involved in the 1993 <u>Carcamo</u> suit. All of these actions involve either some or all of the defendants included in the instant action.

[8] While Plaintiffs have provided a brief overview of the procedural history of the putative class actions in their opposition, the majority of the information included in this discussion was taken from Dole's Motion for Summary Judgement (Rec. Doc. 121) and the related exhibits, because Dole provided a detailed time line of the previous actions. <u>See</u> Dole's Exhibits 57- 58, Rec. Doc. 121-9, pp. 21 - 28. However, wherever Plaintiffs also provided a description of the previous actions, such information was incorporated into the above-referenced overview.

[9] Dole's Statement of Material Facts, Rec. Doc. 121-10, p. 3., ¶ 5.

certification. However, on April 5, 1994, before the Texas state court heard the motion, the defendants removed _Carcamo_ to the United States District Court for the Southern District of Texas. The defendants asserted that federal jurisdiction was proper under the Foreign Sovereign Immunities Act, 28 U.S.C. 1602, because just prior to removal, the defendants had impleaded two Israeli chemical companies indirectly owned by Israel. After removal, the Texas district court consolidated _Carcamo_ with _Delgado v. Shell Oil Co._, No. 94-1337, and the defendants filed a motion to dismiss on the grounds of forum non conveniens ("f.n.c."). On July 11, 1995, the district court granted defendants' motion to dismiss, determining that the plaintiffs' various home countries were better suited to hear their claims. _Delgado v. Shell Oil Co._, 890 F. Supp 1324, 1371-75 (S.D. Tex. 1995), _aff'd_, 231 F.3d 165 (5th Cir. 2000), _cert. denied_, 532 U.S. 972 (2001). Pursuant to Fifth Circuit precedent, the dismissal order included a return jurisdiction clause, allowing the Texas district court to resume jurisdiction over the suit in the event that one of the plaintiffs pursued their claims in a foreign court, and those claims were subsequently dismissed for

lack of jurisdiction in the foreign courts.[10] The dismissal order also preliminarily enjoined plaintiffs and plaintiffs' counsel from filing DBCP actions in other United States' courts.[11] Lastly, in addition to dismissing plaintiffs' claims, the f.n.c. order also denied all pending motions, including the plaintiffs' motion for class certification, as moot. Id. at 1375. On October 27, 1995, the Texas district court entered a final judgment dismissing the entire action based on the f.n.c. dismissal.

---

[10] The return jurisdiction clause reads:

> Notwithstanding the dismissals that may result from this Memorandum and Order, in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions in his home country or the country in which he was injured, that plaintiff may return to this court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed for f.n.c.

Id. at 1375.


[11] On June 19, 1995, a preliminary injunction was imposed in response to a motion by defendants. Id. at 1373. The July 11, 1995 f.n.c. order maintained the preliminary injunction until the court could be briefed more extensively on the issue. Id. at 1375. On October 27, 1995, the court issued an order clarifying the scope of the preliminary injunction, and permanently enjoining plaintiffs from filing suit in other United States' courts. Dole's Exhibit 14, Rec. Doc. 121-5, pp. 42-45. The injunction also enjoined plaintiffs' counsel from filing additional suits in U.S. courts on their behalf. Id. The court's order clarified that the injunction only applied to the plaintiffs and intervenor plaintiffs who were named/had participated in the Delgado suit. Id. In particular, the court's clarification responded to concerns raised by the Delgado plaintiffs that the injunction appeared to apply to the putative class as a whole, not just the individual plaintiffs and intervenors. See id.; see also Pls.' Opposition, Rec. Doc. 175, p. 8 (explaining that prior to the issuance of the October 27, 1995 order, if the preliminary injunction was interpreted broadly, it could have been interpreted to enjoin any DBCP suit from being filed in the United States on behalf on any foreign individual).

Plaintiffs appealed the judgment, but the United States Fifth Circuit Court of Appeals affirmed the dismissal on October 19, 2000. Delgado, 231 F.3d at 182. The United States Supreme Court denied certiorari on April 16, 2001. Delgado, 532 U.S. at 972.

Although the Supreme Court denied certiorari in 2001, this was not the end of the activity associated with the Texas class action. On April 1, 1996, prior to the Fifth Circuit's affirmation of the f.n.c. dismissal, the Costa Rican plaintiffs in Delgado petitioned the Texas district court for reinstatement of their claims pursuant to the return jurisdiction clause. In 1995, the Costa Rican plaintiffs had refiled their claims in their home country of Costa Rica; however, the Costa Rican court denied jurisdiction over the claims, in a decision that was affirmed by both the Costa Rican appellate court and the Supreme Court of Justice of Costa Rica. Therefore, pursuant to the return jurisdiction clause, the Costa Rican plaintiffs could motion to return to the Texas district court to seek relief. See Delgado, 890 F. Supp. at 1375. On February 20, 1997, the Texas district court elected to defer ruling on the Costa Rican plaintiffs' return jurisdiction motion until after the Supreme Court's decision to deny or grant certiorari on the appeal. As previously stated, the Supreme Court denied certiorari in 2001. To this

Court's knowledge, the Costa Rican plaintiffs' motion then sat on the Texas district court's docket until June 21, 2004, when the court remanded the case to the Texas state court where it was originally filed.

The 2004 remand was prompted by the Supreme Court's decision in Dole Food Co. v. Patrickson, 538 U.S. 468 (2003), where the Court determined that a Hawaii federal district court lacked jurisdiction to hear a similar DBCP case that had been filed in 1997. Id. at 481. Because the Texas district court had acquired jurisdiction through the same means as the Hawaii court (under the Foreign Sovereign Immunities Act), the Texas district court determined that the Costa Rican plaintiffs' claims should be remanded to state court because it no longer had subject matter jurisdiction to determine whether the claims could be reinstated. Delgado v. Shell Oil Co., 322 F. Supp. 2d 798, 817 (S.D. Tex. 2004). Although the Texas district court remanded the claims, it explained that its previous decision to dismiss the claims was not void, and it declined to vacate its previous judgment and dismissal. Id. at 812-14. The court explained its decision, noting that,

[b]ecause the [district] court's assertion of subject

matter jurisdiction was affirmed on appeal in an
opinion that the Supreme Court declined to review
before it decided *Patrickson,* 123 S.Ct. at 1655, the
court's decision to assert subject matter jurisdiction
over this action and its decision that plaintiffs'
claims should be dismissed under the doctrine of f.n.c.
are both final.

Id. at 812-13 (citing <u>Stoll v. Gottlieb</u>, 305 U.S.165, 170
(1938)).

Thereafter, the Texas district court remanded the <u>Delgado</u>
and <u>Carcamo</u> cases to state court and entered a final judgment
dismissing the federal action for lack of subject matter
jurisdiction. On remand, the Texas state court reinstated the
cases. The defendants filed a writ of mandamus challenging the
reinstatement, which the state court subsequently denied. The
state court held that the federal district court's f.n.c.
dismissal order was "void" because the federal court had lacked
subject matter jurisdiction. <u>In re Standard Fruit Co.</u>, Nos. 05-
00697, 05-00698, 2005 WL 2230246, at *1 (Tex. App. Sept. 13,
2005). Therefore, all of the <u>Carcamo</u> and <u>Delgado</u> plaintiffs (not
just the Costa Rican plaintiffs) were free to file their claims

with the state court. Id. In September 2007, the Delgado action was dismissed after defendants settled with all named plaintiffs. On September 29, 2009, the Carcamo plaintiffs filed a motion for class certification. On October 27, 2009, following this filing, defendants again removed to federal district court, this time asserting subject matter jurisdiction under the Class Action Fairness Act, 13 U.S.C. § 1332(d). In their notice of removal, defendants argued that under the Class Action Fairness Act, the plaintiffs' motion for class certification "commence[d] a new action as to them," and, therefore, meant that the case could be removed to federal court.[12] Ultimately, the district court found that it did not have subject matter jurisdiction, and it remanded the case back to state court in December of 2009. In its opinion, the court stated that the Carcamo case was "a class action that has been pending in one forum or another since 1993."[13] On June 3, 2010, the Texas state court denied the plaintiffs' motion for class certification. On June 4, 2010, counsel for the Carcamo plaintiffs filed notices of nonsuit.

## B. The Florida, Mississippi, and Louisiana Class Actions

---

[12] Pls.' Exhibit B, Rec. Doc. 175-2, p. 5.

[13] Id. It should be noted that this statement is dicta in the case. It was not a holding of the court, although the holding of the case was based on the court's interpretation of the procedural history.

**(1995 - 2002)**

On June 9, 1995, a group of plaintiffs filed a class action lawsuit, <u>Abarca v. CNK Disposition Corporation</u>, No. 95-3765, on behalf of 3,000 individuals in the Thirteenth Judicial Circuit in Hillsborough County, Florida.[14] The case was removed to federal district court on July 7, 1995. On July 12, 1995, the <u>Abarca</u> plaintiffs voluntarily dismissed the suit.

On May 10, 1996, five individual plaintiffs filed lawsuits in the Circuit Court of Harrison County, Mississippi.[15] The defendants subsequently removed the cases to federal court on diversity jurisdiction grounds. Upon removal, the Mississippi district court dismissed on the grounds of f.n.c. Plaintiffs appealed to the Fifth Circuit, which affirmed the district court's decision in all but one of the cases. <u>Espinola-E v. Coahoma Chem. Co.</u>, 248 F.3d 1138, 1138 (5th Cir. 2001). The

---

[14] Defendants allege that 110 of the plaintiffs included in the Florida suit are currently plaintiffs in the instant action. Dole's Memorandum in Support, Rec. Doc. 121-10, p. 6. Plaintiffs do not refute the allegation, but they do argue that the Florida action was purely a defensive measure taken in response to the broad motion for preliminary injunction that the defendants had filed in the Texas <u>Delgado</u> suit. Pls.' Opp., Rec. Doc. 175, p. 8. Plaintiffs argue that filing the Florida suit was an attempt to preserve their rights in the event that the Texas court enjoined them from filing suits in the future. Pls.' Opp., Rec. Doc. 175, p. 8. They support their argument by noting that the suit in Florida was voluntarily dismissed on July 12, 1995, the day after the Texas court restricted the injunction to only the plaintiffs already named in <u>Delgado</u>. Pls.' Opp., Rec. Doc. 175, pp. 8-9.

[15] Defendants allege that each of these five plaintiffs had also previously filed suit in the Florida action. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 7.

parties did not provide the Court with disposition of that case.

On October 28, 1996, three cases were filed on behalf of approximately 314 plaintiffs in the Twenty-Ninth Judicial District Court for the Parish of St. Charles, Louisiana.[16] Defendants removed these cases to the Eastern District of Louisiana on December 1, 1999, on federal question jurisdiction, specifically, under the Foreign Sovereign Immunities Act. On June 24, 2003, this Court remanded the cases to state court based on the Supreme Court's decision in Patrickson. To the Court's knowledge, these cases are still pending in Louisiana state court.

**C.    The Hawaii Class Actions (1997 - 2011): Dole Food Co. v. Patrickson**

On October 3, 1997, a putative class action was filed in the Circuit Court of the First Circuit of Hawaii, Patrickson et al. v. Dole Food Co. et al., No. 97-4062-09, on behalf of fifty-nine plaintiffs who had allegedly been exposed to DBCP. Like the Texas and Louisiana cases before it, the case was removed on federal question jurisdiction under the Foreign Sovereign Immunities Act. The district court dismissed the case on the grounds of f.n.c.

---

[16] Defendants allege that four of the plaintiffs who filed suit in Louisiana in 1996 are currently plaintiffs in the instant action. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 7.

Plaintiffs appealed to the Ninth Circuit, which subsequently reversed the district court's decision to permit removal under federal question jurisdiction. <u>Patrickson v. Dole Food Co.</u>, 251 F.3d 795 (9th Cir. 2001), <u>aff'd</u>, 538 U.S. 468 (2003). The case was then remanded to state court where plaintiffs filed a motion for class certification on February 25, 2008. On July 16, 2008, the state court denied plaintiffs' motion for class certification.[17] To the Court's knowledge, the state court granted summary judgment in favor of the defendants on July 30, 2009. An appeal is currently pending.

On June 4, 2010, an additional group of plaintiffs with DBCP claims filed nine lawsuits in the Circuit Court of the First Circuit, Hawaii against the defendants listed in the instant action.[18] On August 11, 2011, all plaintiffs voluntarily dismissed their claims. DBCP plaintiffs filed more suits on July 21, 2011, May 31, 2011, and June 2, 2011, all of which are currently pending.

**D.    The California Class Actions (2005 - 2011)**

On April 14, 2005, approximately 105 plaintiffs filed a

---

[17] Dole's Exhibit 24, Rec. Doc. 121-6, pp. 141- 44.

[18] Dole alleges that fifty-eight Plaintiffs in the instant case were named in the 2010 action filed in Hawaii. Dole's State. of Mat. Facts, Rec. Doc. 121-10, p.7, ¶ 20.

lawsuit in the Superior Court of the State of California for the County of Los Angeles, <u>Abrego v. Dole Food Co., Inc.</u>, No. 331844, alleging exposure to DBCP while working on banana farms in Panama.[19] On April 2, 2009, the plaintiffs voluntarily dismissed their claims against Dole and Shell Agricultural and Chemical Co.[20] On March 11, 2010, the court dismissed the plaintiffs' claims as to all defendants on the grounds of f.n.c., finding that Michigan was a more convenient forum.

On October 1, 2004, plaintiffs from Costa Rica filed suit in Superior Court of the State of California for the County of Los Angeles, <u>Abarca et al. v. Dole Food Co. et al.</u>, No. 322412.[21] On July 2, 2008, the court entered a judgment against a number of

---

[19] Defendants allege that ninety-seven plaintiffs included in the California suit are also named Plaintiffs in the instant case. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 10. Defendants also note that an additional suit was filed in December 2008 on behalf of eight Panamanian plaintiffs who are also Plaintiffs in the instant action. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 10. The disposition of that action is unclear from the memoranda and exhibits before the Court.

[20] Dole's Exhibit 40, Rec. Doc. 121-7, p. 424-33. Dole alleges that the claims were dismissed because Dole did not have operations in Panama. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 10. No exhibits were submitted which state the specific reason why the plaintiffs' dismissed their claims against Dole. The claims, however, were dismissed without prejudice. Dole's Exhibit 40, Rec. Doc. 121-7, pp. 424-25.

[21] Defendants allege that eight plaintiffs included in the California suit are also named plaintiffs in the instant case. Dole's Mem. in Supp., Rec. Doc. 121-1, p. 10.

plaintiffs in favor of the defendants.[22] On March 16, 2011, plaintiffs Leon Antonio Osorno-Osorno and Elvin Ramirez-Hidalgo were dismissed with prejudice for failure to comply with a trial court order.[23]

**E.  The Instant Action (2011 - Present): <u>Chaverri et al. v. Dole Food Co., Inc. et al.</u>**

As previously stated, the instant litigation involves seven consolidated actions filed between May 31, 2011 and June 2, 2011, in the Eastern District of Louisiana. Defendants filed their motions for summary judgment prior to consolidation on April 6, 2012. On April 30, 2012, the Court continued the hearings on the motions. On May 20, 2012, the matters were consolidated. As noted, the Court held oral argument on the motions on August 15, 2012.

PARTIES' ARGUMENTS

Defendants argue that all claims asserted against them are prescribed pursuant to Louisiana Civil Code article 3492, which

---

[22]  The court's order entered judgment as a matter of law against 1114 plaintiffs in this suit. Dole's Exhibit 42, Rec. Doc. 121-8, pp. 2 - 33. The basis for the judgment is unclear. Of these 1114 plaintiffs, Defendants allege that five are plaintiffs in the current suit. Dole's State. of Mat. Facts, Rec. Doc. 121-10, p.9; Dole's Exhibit 56, Rec. Doc. 121-9, pp. 3 - 19. Plaintiffs dismissed as a matter of law in the California case were: Javier Antonio Carballo-Mena, Marcelo Corea-Corea, Miguel Angel Morales-Guzman, Federico Clever Montero-Salas, and Melecio Varela-Soto.

[23] Defendants allege that both plaintiffs are currently a party to the instant action. Dole's State. of Mat. Facts, Rec. Doc. 121-10, p. 10.

provides a one-year prescriptive period for delictual actions. Defendants advance their argument as follows. First, Defendants argue that the Plaintiffs' claims are prescribed on their face. They contend that per the letter of the law, Plaintiffs had one year in which to file their actions after being exposed to DBCP. Because no Plaintiff alleges exposure after 1992, and all but one allege exposure between 1966 and 1985, Defendants assert that Plaintiffs' 2011 filings in this Court are beyond the one-year prescriptive period and are barred as a matter of law. Second, Defendants argue that no interruption or suspension of prescription applies to Plaintiffs' claims. Specifically, they argue that Plaintiffs' assertions that the 1993 Texas Carcamo/Delgado class action interrupted prescription fails because: (1) any interruption based on the filing of the class action ceased as soon as the motion for class certification was denied as moot and/or the case was dismissed in 1995; (2) Louisiana does not recognize "cross-jurisdictional" interruption, e.g. Louisiana will not interrupt prescription when the initial action is filed beyond the state's borders; (3) interruption of prescription is not appropriate for mass tort class actions; and, (4) even assuming that interruption is appropriate, approximately 210 Plaintiffs in the instant action filed individual lawsuits in

other jurisdictions between 1995 and 2011, "thereby 'opt[ing] out of the class action suit'" and terminating any tolling of the prescriptive period that may have occurred.[24] In some instances, Defendants also argue that res judicata bars certain Plaintiffs from suing. Third, Defendants argue that because Plaintiffs assert that the doctrine of *contra non valentem* applies to their claims, Plaintiffs must make an actual evidentiary showing of when they discovered their claim, and they must show that the delay in discovering their claim was reasonable. Defendants argue that Plaintiffs' conclusory statements that they were unaware of the connection between sterility and DBCP prior to 1993 are not sufficient to survive summary judgment and, therefore, their claims are prescribed as a matter of law.

Plaintiffs respond by asserting that their claims are not prescribed because the 1993 <u>Carcamo/Delgado</u> suits interrupted prescription. Plaintiffs argue that the 1995 denial of class certification was not a denial on the merits and, therefore, does not constitute a denial for the purpose of restarting the prescriptive period. Furthermore, Plaintiffs contend that the October 27, 1995 judgment dismissing the <u>Carcamo/Delgado</u>

---

[24] Dole's Mem. in Supp., Rec. Doc. 121, pp. 3-4 (quoting <u>Lester v. Exxon Mobil Corp.</u>, 09-1105 (La. App. 5 Cir. 6/29/10), 42 So. 3d 1071, 1076).

plaintiffs' claims was not a final judgment for the purposes of prescription. Plaintiffs argue that because the f.n.c. dismissal was not on the merits, the corresponding "final judgement" that was entered in the case was not, in fact, final.[25] Furthermore, they contend that because the f.n.c. dismissal contained a return jurisdiction clause that allowed the Texas court to retain jurisdiction over the case, the judgement entered by the court effectively acted as a stay or continuance of the case.[26] Specifically, Plaintiffs point to the statement that the court would "resume jurisdiction over the action as if the case had never been dismissed for f.n.c." as proof that the court only dismissed the case and entered a final judgment for the purposes of appeal, rather than to terminate the pendency of the case itself.[27] In addition, Plaintiffs also assert that to the extent that the 1995 dismissal of the Carcamo/Delgado case was final, the dismissal, and its corresponding denial of class certification, was voided in 2005 by the decision of the Texas state court when it reinstated the suits. Specifically, Plaintiffs point to the December 2009 statement of the federal

_____

[25] Hr'g Tr. 38-39, 48-50.

[26] Hr'g Tr. 50.

[27] Pls.' Opp., Rec. Doc. 175, pp. 19-20.

district court that, " '[Carcamo is a] class action [that] has been pending in one forum or another since 1993,' " as proof that the class action persisted from 1993 until the denial of class certification in 2010.[28] Plaintiffs also contend that this same finding by the Texas district court precludes this Court from finding otherwise in the instant case.

Plaintiffs further argue that: (1) Louisiana law does recognize cross-jurisdictional interruption of prescription; (2) interruption of prescription is appropriate for, and can be applied to, mass tort actions; and, (3) subsequent suits filed by individual plaintiffs did not "opt" Plaintiffs out of the Carcamo/Delgado class action and, therefore, such filings did not terminate the interruption of prescription. In response to Defendants' arguments that certain Plaintiffs are prohibited from suing per res judicata, Plaintiffs assert that no Plaintiff in the current suit ever gave his or her permission to participate in the DBCP suits in question. Therefore, none of those Plaintiffs should be barred from suing in Louisiana. Lastly, Plaintiffs assert that they have met the evidentiary burden under the doctrine of *contra non valentem* by alleging in their petition that they did not discover the connection between their injuries

---

[28] Pls.' Opp., Rec. Doc. 175, p. 1.

and DBCP until 1993, and by submitting signed affidavits stating the same to the Court.[29]

### DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta,

---

[29] Pls.' Opp., Rec. Doc. 175, p. 31; See Pls.' Exhibit H - H-219, Rec. Docs. 175-8, 175-9, 175-10, pp. 1 - 196.

530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## B. Applicable Law

In a diversity action, a federal district court applies the prescriptive period of the forum state. See <u>Orleans Parish Sch. Bd. v. Asbestos Corp. Ltd.</u>, 114 F.3d 66, 68 (5th Cir. 1997); <u>Lanzas v. Am. Tobacco., Inc.</u>, No. 00-2262, 2001 WL 1223600, at *1 (E.D. La. Oct. 11, 2001). Louisiana Civil Code article 3492 provides a one-year liberative prescription period for delictual actions. LA. CIV. CODE art. 3492. Prescription begins to run from the day the plaintiff's injury is sustained. <u>Id.</u> Injury is considered to have been sustained when damage to the plaintiff has "manifested itself with sufficient certainty to support accrual of a cause of action." <u>Cole v. Celotex Corp.</u>, 620 So. 2d 1154, 1156 (La. 1993).

Ordinarily, the burden of proving that a plaintiff's claims have prescribed remains with the movant. <u>Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.</u>, 310 F.3d 870, 877 (5th Cir. 2002). However, when a plaintiff's claim has prescribed on the face of the complaint, the burden shifts to the plaintiff to negate prescription by proving suspension, interruption, or some other exception to prescription. <u>Id.</u> Prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished. <u>Lima v. Schmidt</u>, 595 So. 2d 624, 629

(La. 1992).

**C. Analysis**

As an initial matter, the Court notes that it will not address any arguments made by the parties with respect to "opting out." Per this Court's May 9, 2012 Order (Rec. Doc. 149), briefing on this issue was stayed pending the Louisiana Supreme Court's resolution of <u>Duckworth v. Louisiana Farm Bureau Mutual Insurance Co.</u>, 11-837 (La. App. 4 Cir. 11/23/11); 78 So. 3d 835, <u>writ granted</u>, 11-2835 (La. 3/30/12). Moreover, because the Court finds that its analysis of class action interruption of prescription is dispositive, it also declines to address the arguments regarding res judicata and *contra non velentem*. For the purposes of the prescription analysis, the Court will assume, without finding, that all Plaintiffs have met their initial burden under *contra non velentem*. Additionally, the Court will also assume that Louisiana recognizes cross-jurisdictional interruption of prescription. <u>See</u> <u>Smith v. Cutter Biological</u>, 99-2068 (La. App. 4 Cir. 9/6/00); 770 So. 2d 392, 408 (analyzing the interruption of prescription based upon a class action filed in North Dakota without specifically finding that the principles of cross-jurisdictional interruption apply); <u>Orleans Parish Sch. Bd. v. United States Gypsum Co.</u>, 892 F. Supp. 794, 802-03 (E.D. La.

1995) (analyzing the interruption of prescription based upon a national class action that "effectively" interrupted the plaintiff's prescriptive period without specifically finding that the principles of cross-jurisdictional interruption apply).

Next, the Court addresses the question of whether the Plaintiffs' claims are facially prescribed. Plaintiffs have asserted that they were injured and/or exposed to DBCP from 1966 until 1992, approximately nineteen to forty-five years before the filing of the instant suit (depending upon the individual Plaintiff). Plaintiffs have also alleged that they did not know of the connection between DBCP and their injuries until 1993, approximately eighteen years before the instant action was filed. As such, the Court finds that all Plaintiffs' claims are clearly beyond the one-year prescriptive period set forth in article 3492 and, therefore, are prescribed on their face. Thus, Plaintiffs must demonstrate that the prescriptive period was either interrupted or suspended in order to survive summary judgment.

Plaintiffs assert that the 1993 filing of the Carcamo/Delgado class action suspends or interrupts the prescriptive period in the instant case, making Plaintiffs' filing timely. The Court finds this argument unpersuasive. In assessing the argument, the Court looks to Louisiana's class

action tolling laws as they existed before 1997.[30] Prior to 1997, the filing of a class action interrupted the prescriptive period as to the claims of all members of the putative class.[31] The prescriptive period remained interrupted until class certification was denied. Eastin, 971 So. 2d at 381; Bordelon, 822 So. 2d at 228. Neither Louisiana courts nor the legislature recognized the continuation of interruption through the appeal of an order denying class certification. Bordelon, 822 So.2d at 228. Furthermore, when prescription was interrupted by the filing of a

---

[30] Effective July 1, 1997, Chapter Five of the Louisiana Code of Civil Procedure was significantly revised. The revisions included the creation of article 596, which governs the suspension of prescription with respect to class action claims. This chapter of the code was revised again in 2010. Notwithstanding article 596 and its subsequent revision, Louisiana law dictates that the Court should apply the laws as they existed at the time that the prescriptive period for the instant case would have been interrupted. See, e.g., Eastin v. Entergy Corp., 07-212 (La. App. 5 Cir. 10/16/07); 971 So. 2d 374, 381 (applying pre-1997 law to the analysis of the interruption of prescription where the action that allegedly interrupted prescription occurred before the 1997 changes to the Louisiana class action laws); Bordelon v. Alexandria, 02-48 (La. App. 3 Cir. 8/14/02); 822 So. 2d 223, 227-28 (applying pre-1997 law); Smith, 770 So. 2d at 408-10 (applying pre-1997 law).

[31] Eastin, 971 So. 2d at 381. Under current law, the prescriptive period for the members of the putative class is suspended, not interrupted, when an individual files a class action suit. LA. CODE CIV. PROC. art. 596 (A). This difference is significant. When prescription is interrupted, the plaintiff is given the full prescriptive period to bring an action once the prescriptive period begins to run anew. See LA. CIV. CODE art. 3466. In the case of delictual actions, this means that a plaintiff is given a full year to bring an action from the date that the prescriptive period starts to run again. However, when prescription is suspended, the plaintiff is only given the remainder of the time that was left before the prescriptive period was suspended to file an action. See id. Thus, in the case of a delictual action, if six months has passed before the prescriptive period is suspended, a plaintiff will only have six months remaining within which to file an action after the prescriptive period begins to run anew.

suit, the interruption of the prescriptive period only "continue[d] as long as the suit [wa]s pending."[32] In Louisiana, " 'an action or [a] suit is 'pending' from its inception until the rendition of final judgment.' " Hebert v. Doctors Mem'l Hosp., 486 So. 2d 717, 721 (La. 1986) (quoting BLACK'S LAW DICTIONARY 1021 (5th ed. 1979)). Therefore, there are two questions before the Court: (1) did the July 1995 denial of class certification as moot count as a denial for the purposes of restarting prescription; and/or, (2) was the October 1995 order dismissing Delgado on the grounds of f.n.c. a final judgment, such that the action was no longer pending for prescription purposes. An affirmative answer to either of these questions results in the prescription of the Plaintiffs' claims.

The Court finds that the denial of the motion for class certification as moot restarted the prescriptive period. Prior to 1997, Louisiana law required that the prescriptive period be restarted when the district court denied class certification. Eastin, 971 So. 2d at 381 ("Under the pre-1997 law, the filing of a class action interrupted prescription as to the claims of all

---

[32] LA. CIV. CODE art. 3463 ("An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending."); see also Eastin, 971 So. 2d at 381-82. While referred to as "pre-1997" law in the context of this case, this particular law still applies under current Louisiana law.

members of the class, and the tolling of the statute of limitations ceased *as soon as the district court **denied** class certification.*"(emphasis added) (citations omitted)). Courts did not make any distinction based upon the type or manner of denial, nor did they require that the denial be on the merits. See id. (requiring only that class certification be denied); Bordelon, 822 So. 2d at 228 (same); Smith, 770 So. 2d at 408-10 (same). Plainly stated, the Texas federal district court denied the motion for class certification on July 11, 1995; thus, the prescriptive period recommenced on July 11, 1995, the date of the denial. To the extent that Plaintiffs argue that there was any ambiguity in the effect of the denial of class certification as moot, this Court notes that the Texas district court also entered a "final judgment" dismissing the case on the grounds of f.n.c. on October 27, 1995. Per Louisiana law, the entrance of the final judgment absolutely stopped the pendency of the case and restarted prescription. While Plaintiffs may argue that the October 27, 1995 judgment entered by the Texas district court was not "final," this Court notes that the United States Supreme Court has specifically held that a dismissal under f.n.c. "*puts*

*an end to action* and hence *is final* and appealable."[33] Thus, Plaintiffs' arguments that the 1995 judgement merely stayed the case and/or "was tantamount to an interlocutory appeal" are without merit.[34] Therefore, at most, prescription was interrupted until October 27, 1995, at which time it began to run anew, expiring on October 27, 1996, and making the Plaintiffs' 2011 filing of the instant action approximately fifteen years too late.

---

[33] Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (emphasis added) (quoting Jiffy Lubricator Co., Inc. v. Stewart-Warner Corp., 177 F.2d 360, 362 (4th Cir. 1949)). The Court recognizes that Louisiana procedural law, unlike federal procedural law, does not recognize a f.n.c. dismissal as a "final judgement" because it does not directly adjudicate the merits of the case. See, e.g., McConnell v. Travelers Indem. Co., 346 F.2d 219, 222-23 (5th Cir. 1965) ("[U]nder Louisiana law, a final judgment is one which determines the merits of an action as opposed to a preliminary matter in the course of the action."). However, the effect of the finality in terms of res judicata and collateral estoppel are not in question in this case, the Delgado plaintiffs and putative class members certainly were not foreclosed from bringing their claims during the relevant prescriptive period. Rather, the Texas district court's issuance of a procedurally final ruling is what is important as it indicates to this Court whether or not the putative class members were on notice that their rights were not being preserved. Thus, because the key question of procedural finality in this case turns on the effect of the issuance of a f.n.c. dismissal in federal court, i.e. does a federal f.n.c. dismissal end a case, stay a case, continue a case, etc., the Court looks to the relevant federal law on the issue. As noted, under federal law a final judgment on a f.n.c. dismissal "puts an end to a case," and, thus, is final and appealable. Furthermore, to the extent that counsel argues that there were interpretation questions at the time, the Court notes that the October 27, 1995 judgment specifically stated in the text that "[t]his is a FINAL JUDGMENT." Dole's Exhibit 14, Rec. Doc. 121-5, p. 345.

[34] Hr'g Tr. 49-50. It should be noted that even if the f.n.c. dismissal had been an "interlocutory appeal" as counsel has argued, Louisiana law prior to 1997 did not recognize the right to extend the interruption of prescription through the appeals process. See Eastin, 971 So. 2d at 381. Thus, the denial of the motion for class certification alone would have been sufficient to restart the running of prescription regardless of the later disposition of the case. See id.; see also discussion of appeal infra p. 34-35.

28

While the plain language of the Louisiana case law indicates that the prescriptive period began to run again in 1995, the Court also looks to the reasoning of the United States Supreme Court in <u>American Pipe and Construction Co. v. Utah</u>, 414 U.S. 538 (1974), and <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345 (1983), as well as the reasoning of the United States Court of Appeals for the Eleventh Circuit in <u>Armstrong v. Martin Marietta Corp.</u>, 138 F.3d 1374 (11th Cir. 1998), in making this determination. These three cases formed the basis of Louisiana case law on class action interruption of prescription prior to 1997 and, thus, further inform the Court on the proper interpretation of Louisiana law with respect to this issue.[35]

In <u>American Pipe</u> the Supreme Court found that the filing of a class action tolled the statute of limitations for members of the putative class seeking to intervene in a suit. 414 U.S. at 770. The Court found that the suspension of the statute of limitations for putative class members was appropriate because it promoted the general principles of class actions. <u>Id.</u> at 762-66. In particular, the Court found that the tolling principle discouraged the filing of individual actions since potential

---

[35] See <u>Bordelon</u>, 822 So. 2d at 228 (citing <u>Armstrong</u> and <u>Crown, Cork & Seal</u> when discussing Louisiana law on the interruption of the prescriptive period); <u>Smith</u>, 770 So. 2d at 408-10 (discussing <u>American Pipe</u> and <u>Armstrong</u> when explaining Louisiana law on the interruption of the prescriptive period).

plaintiffs could be assured that their rights were being preserved, which was consistent with the class action objective of judicial economy. Id. at 764-66. Furthermore, the Court also found that allowing such a suspension was in line with the general principles behind the use of the statute of limitations. Id. at 766-67. The Court determined that once one individual plaintiff had filed suit on behalf of a class, all defendants were put on notice that they needed to defend themselves against a set of substantive claims as well as a particular generic class of plaintiffs. Id. Thus, no defendant was in danger of being surprised by an action filed by a plaintiff who had slept on his rights. Id. at 466. The Court's reasoning led it to conclude that "the commencement of the class action . . . suspend[s] the running of the limitation period *only during the pendency of the motion* to strip the suit of its class action character." Id. at 770 (emphasis added).

Likewise, in Crown, Cork & Seal, the Court found that this same line of reasoning supported the suspension of the statute of limitations period for putative class members seeking to file individual lawsuits. 462 U.S. at 352 -54. The Court in that case again found that it would not make sense for a putative class member to have to file a separate individual action to preserve

his claim while a class action was pending. See id. at 350-53. Therefore, the Court found that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id. at 353-54 (citation omitted). The Court further determined that the statute of limitations remained tolled until class certification was denied. Id.

In Armstrong, the Eleventh Circuit echoed the Supreme Court's reasoning in finding that the tolling of the statute of limitations lasted only until the denial of class certification, not until the termination of the appeals process. 138 F.3d at 1378. The court found that the purpose of the tolling principle with respect to class actions was to "encourage class members to reasonably rely on the class action to protect their rights." Id. at 1380. The court determined that it was unreasonable for putative class members to rely on the class action to protect their rights after the district court had denied class certification. Id. at 1389-90. In making this determination, the court stated that it "prefer[ed] a clear rule that operate[d] early in the litigation, that settle[d] the tolling question with regard to all parties, as opposed to a complex of vague rules

under which the tolling period w[ould] be indeterminate and almost certainly very long." Id. at 1378 n.3. Thus, the court found that once the class action was no longer pending, in whole or in part, it was only reasonable for individual plaintiffs to seek to protect their own rights.[36]

A reading of the above-referenced cases indicates to this Court that there are three main concerns when determining whether or not a prescriptive period has been interrupted: (1) the actual pendency of the class action itself; (2) the objective reasonableness of an individual's reliance on an action to protect his or her rights; and, (3) the balance of prejudice to both the plaintiff and defendant based upon the principles underlying class actions and statutes of limitations. In the instant case, the 1993 Carcamo/Delgado motion for class certification was no longer pending after the district court denied the motion for class certification, dismissed the case, and entered a final judgment in 1995. While the denial of class

---

[36] Id. at 1390-91. In analyzing this issue, the Armstrong court looked at a variety of appellate court decisions that had also addressed the issue of extending the tolling period through the appeal of a denial of class certification. Id. at 1384. In particular, the court noted that in Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384 (5th Cir. 1989) (per curium), the Fifth Circuit held that the statute of limitations begins to run upon the entry of the district court's order denying class certification, even where the same district court later reconsiders the issue of class certification and decides that certification is proper. Id. at 390. Thus, any arguments made by Plaintiffs that the 2004 reinstatement of the suit as a class action reinterrupted the prescriptive period are foreclosed by the court's reasoning in Calderon.

certification may not have been on the merits, coupled with the dismissal of the action, it was nonetheless sufficient to alert putative class members that they could not reasonably expect their rights to be protected by the class action. By denying the motion as moot and dismissing the case, every member of the putative class was put on notice that the motion for class action was no longer pending in the court and, therefore, that the court would not entertain the certification of the class. Thus, each member of the class was alerted that they needed to act to preserve their rights. Moreover, the Court notes that the district court's f.n.c. dismissal was premised on the availability of forums in plaintiffs' home countries, many of which did/do not have a mechanism for class action lawsuits, a fact which the court contemplated in issuing its dismissal order.[37] As such, the dismissal itself supported the

_____

[37] <u>Delgado</u>, 890 F. Supp. at 1368.

> Plaintiffs also argue that because class actions are unavailable in many of their home countries and because joinder of large numbers of actions is not customary in these countries, they will be forced to commence thousands of individual action in hundreds of courts that are understaffed, back-logged, and ill-equipped to handle the sheer number and complexity of these cases in a timely, efficient manner. . . . Defendants respond that while plaintiffs have sought class certification in several of the pending actions, no classes have been certified. Defendants also note that even if classes are certified, these cases will take years to try because each plaintiff will still have to present individual proof of exposure, injury, and causation. The court

understanding that a class action would not be available to protect the rights of individual class members and that plaintiffs would need to file individual actions.

Furthermore, even if this Court were to broadly extend the interruption of prescription until the end of the appeals process (a conclusion which pre-1997 law does not support) in order to be fully assured that the judgment was in fact final in any jurisdiction, in 2000 the Fifth Circuit affirmed the f.n.c. dismissal, and in 2001 the Supreme Court denied certiorari.[38] As the highest court in the United States had affirmed the dismissal of the suit as well as the denial of the motion for class certification, no plaintiff could have reasonably believed that their rights were protected by the class action as it no longer existed at that point. Therefore, at the very least, Plaintiffs would have had to file individual actions by 2002 in order to preserve their rights.

While Plaintiffs argue that the Supreme Court's 2003

---

agrees.

[38] It should be noted that under current Louisiana law, article 596 does extend the suspension of prescription throughout the appeals process. Thus, because "prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished," the Court finds that evaluating the outcome through the appeals process is not improper. Lima, 595 So. 2d at 629. However, as noted above, even with such an extension Plaintiffs claims are still prescribed.

34

decision in <u>Patrickson</u> continued the interruption of the prescriptive period, the Court notes that two years had passed between the denial of certiorari in the <u>Delgado</u> case and the Supreme Court's decision in <u>Patrickson</u>. Thus, for at least two years no plaintiff was justified in relying on <u>Patrickson</u> to preserve his claims, and it was during that time that the prescriptive period would have lapsed. In addition, allowing the Plaintiffs to rely on <u>Patrickson</u> to continue the interruption of the prescriptive period would border on the acceptance of the "piggy backing" or "stacking" of class actions on top of one another,[39] a practice which Louisiana courts have firmly rejected. See <u>Lanzas</u>, 2001 WL 1223600 ("[C]ourts apply a "no piggyback rule", which prevents tolling by a later class action.") (citations omitted); <u>Smith</u>, 770 So. 2d at 410 ("LSA-C.C. art. 3462 was not intended to interrupt prescription where the stacking of class actions is concerned."). Therefore, this Court would only be justified in looking at the <u>Delgado</u> action, which was terminated when certiorari was denied in 2001.

---

[39] The "piggy backing" or "stacking" of class actions refers to the principle by which a plaintiff attempts to rely on multiple class actions to interrupt or suspend the prescriptive period in a suit. By relying on class actions that have been filed either concurrently or consecutively, a plaintiff may be able to interrupt or suspend a prescriptive period almost indefinitely. See <u>Smith</u>, 770 So. 2d at 410.

To the extent that Plaintiffs argue that the Costa Rican plaintiffs' April 1996 motion to reinstate the case pursuant to the return jurisdiction clause continued the interruption of prescription, or that the mere existence of the return jurisdiction clause continued the interruption period, the Court finds the Fifth Circuit cases addressing the purpose of return jurisdiction clauses helpful. In <u>Robinson v. TCI/US W. Communications, Inc.</u>, 117 F.3d 900 (5th Cir. 1997), the court explained that the inclusion of a return jurisdiction clause in a f.n.c. dismissal "is part of a larger set of measures needed 'to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts.' " <u>Id.</u> at 907-08. In particular, the court noted that such measures are necessary, because the American court entering the f.n.c. dismissal does not know that the foreign court to which it has deferred will actually hear the suit. <u>See</u> <u>id.</u> at 907. Thus, in order to ensure that "*the plaintiff* may return to the American forum" in the event that the chosen foreign does not reinstate the suit, a return jurisdiction clause is included. <u>Id.</u> (emphasis added). Essentially, such clauses provide a safeguard to ensure that an *actual plaintiff* in a suit is not prejudiced by the f.n.c. dismissal. <u>See</u> <u>id.</u> (emphasis added).

In the instant case, the return jurisdiction clause functioned as outlined above. It gave the actual named plaintiffs and intervenors in the suit the right to return to the Texas district court and motion to have the case reopened. See Delgado, 890 F. Supp. at 1375 ("[Upon] the dismissal for lack of jurisdiction of any action commenced by *a plaintiff in these actions* in his home country or the country in which he was injured, *that plaintiff* may return to this court and*, upon proper motion*, the court will resume jurisdiction over the action."(emphasis added)). Thus, at the time that the f.n.c. dismissal was issued the only thing known to any plaintiff, intervenor, or putative class member was that if an actual plaintiff's case was dismissed, then that same plaintiff could return to the Texas district court and motion for the court to resume jurisdiction over the action.[40] The language used by the court in the Delgado return jurisdiction clause, as well as the

---

[40] This understanding of the return jurisdiction clause is further supported by the permanent injunction that was included with the October 27, 1995 Final Judgment. The injunction clarified that only the actual plaintiffs and intervenors in the Carcamo/Delgado cases would be enjoined from filing suit in the United States as a result of the f.n.c. dismissal. Prior to this clarification, Plaintiffs have noted that the court's previously issued preliminary injunction could have been construed to also include the putative class members. See Pls.' Opp., Rec. Doc. 175, p. 8-9; see supra notes 11, 14. By clarifying the injunction that was issued in conjunction with the f.n.c. dismissal, the court indicated that only the actual parties to the case would necessarily need the safeguard measure of the return jurisdiction clause, as all putative class member were free to file suit in any jurisdiction. And, as the procedural history indicates, many of the putative class member did file suits in a number of jurisdictions.

reasoning expressed by the Fifth Circuit regarding the inclusion of return jurisdiction clauses, does not indicate anything more or less. Most importantly, it does not indicate that the right to return extended to putative class members, that the case would necessarily be reopened, much less reopened as a class action, or even that other plaintiffs, aside from the plaintiff making the motion, would be allowed to rejoin the case in Texas.[41] Therefore, in April 1996 when the Costa Rican plaintiffs returned, their return did not affect the rights or status of any party to the Delgado case, aside from their own, much less the former putative class members. Moreover, even though the Texas district court remanded the Costa Rican petition back to state court much later in 2004, the Court notes that the Texas district court did not vacate its prior dismissal or its corresponding denial of the pending motions, but rather, found that its

---

[41] Interestingly, this same fact was made known to the Delgado plaintiffs, intervenors, and putative class members in 1995. In an October 6, 1995 Order issued by the Texas district court judge the court states that

> [t]he possibility of returning to this court is not an automatic right, it is a fail-safe provision intended by the court to insure that plaintiffs have some forum in which to press their claims if one or more of the foreign forums in which the claims were refiled refused to hear them for lack of jurisdiction. The court did not intend the requirement that plaintiffs bring their claims in foreign forums to be a perfunctory act designed to result in the dismissal of the actions. . . . The July 11, 1995, Memorandum and Order states that return will only be permitted 'upon proper motion.'

Order of October 6, 1995, Delgado et al. v. Shell Oil Co. et al., No. 94-1337, (S.D. Tex. Oct. 6, 1995), Rec. Doc. 372, p. 2-3.

previous decision was *final*. As such, the prescription clock kept ticking for the members of the putative class in April 1995 and expired in July 1996, a year to the day that the motion for class certification was denied and the case was dismissed.[42]

Lastly, when evaluating this outcome in light of the principles behind both prescription and class actions, the Court does not find that this decision is overly prejudicial. All Plaintiffs were given ample time to file their individual claims in Louisiana, and each Plaintiff was alerted that their rights were not protected when the Texas court denied class certification and dismissed the case in 1995. While the events associated with the case after the 2003 Patrickson decision may have had the potential to confuse Plaintiffs, the Plaintiffs' claims prescribed in 1996, prior to any of those events taking place. Additionally, if the Court were to allow this action to proceed, the tenets behind the prescriptive period would be directly called into question. In the seventeen years that have passed since the Carcamo/Delgado action was filed, evidence and witnesses have become harder to locate and claims have grown stale. This conclusion is supported by the testimony of the

---

[42] Or, being generous, in October 1996, a year to the day that the final judgment was entered.

Plaintiffs' own counsel, who explained to the Court that at least eight of the Plaintiffs involved in the suit have passed away and counsel has been unable to locate thirty-three others.[43] On the whole, this further supports the Court's finding that the Plaintiffs' claims in the instant action are prescribed.

While the Court is sympathetic to the plight of the Plaintiffs in this case, it finds that the reasoning expressed in American Pipe, Crown, Cork & Seal, Armstrong, and the Louisiana cases that have adopted them preclude it from finding that these claims are not prescribed. All of the above-referenced authorities illustrate that when a court is evaluating the interruption of prescription for putative class members, it should look for a bright line rule that will allow future potential plaintiffs to be assured that their rights are preserved. By Plaintiffs' own admission, the case before this Court is a "one-in-a-million instance," and, as such, the Court declines to adopt a one-in-a-million rule that would blur the lines and confuse future plaintiffs in this and other Louisiana courts. Accordingly,

**IT IS ORDERED** that the Defendants' motions are hereby

---

[43] Hr'g T. 24-5; Pls.' Opp., Rec. Doc. 175, p. 31 n.9. See generally Pls.' Opp., Exhibits I - J, Rec. Docs. 175-11, 175-12.

**GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned consolidated matters are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that all pending motions in this consolidated matter are **DENIED as moot.**

New Orleans, Louisiana this 17th day of September, 2012.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE